GEORGE SALMON *vs.* GEORGE GROSVENOR AND SAM-
UEL HART.

NELLIS S. NELSON *vs.* THE SAME.

A note payable on demand must be demanded, and notice of non-payment given
to the indorser, within a reasonable time after the date, in order to charge
him as indorser; and if not so demanded and notice given, the indorser is
discharged.

What is a reasonable time is a mixed question of law and fact, in determining
which the following considerations may be taken into the account. 1st. The
residence of the several parties to the paper. 2d. Whether the bill or note
is payable with, or without, interest. 3d. That it was the understanding of
the parties that payment was not to be immediately demanded.

When parties contemplate a term of credit, and a note payable on demand,
with interest, is given, it is reasonable to presume that they intended a delay
for at least the ordinary period at which bank paper is drawn, viz., three
months.

G. applied to C. for a loan of $2,000. C. agreed to make the loan, which was
to be secured by G.'s note indorsed by H., at the same time saying that he
would not probably want the money until the next winter, and might not,
for a year. G. then made a note for $2,000, dated June 26, 1857, payable on
demand, with interest, to the order of H. at a bank, and procured H. to in-
dorse it, informing him that he (G.) could get considerable time. The note,
so indorsed, was delivered to C. A note of the same date, and in the same
form, for $500, was made by G. and indorsed by H. and delivered to N.,
from whom the money was obtained. It was made payable on demand,
because the loan was made for a short time, and in order that N. might get
the money on it when he wanted it. At the date of the notes, all the par-
ties thereto lived in the same village, and continued to live there. On the
1st of August, 1857, (thirty-five days after its date,) the $2,000 note was
presented at the bank, and payment demanded and refused. About the 20th
of August, one More saw H. and informed him that he had called on G., had
no confidence in him, and wanted the money on the $500 note. On the 4th
of September, 1857, that note was presented to G., at the bank, payment
demanded and refused, and notice given to H. The demand in this case was
made sixty-nine days after date.

*Held*, 1. That on the evidence and authorities, it was not the intention or un-
derstanding of the parties that payment should be demanded immediately,
but that, on the contrary, time was to be allowed beyond the period in which
the law authorized the holder to demand payment.

2. That the delay to demand and give notice of non-payment was not such as
to discharge the indorser, in either case.

THESE actions were brought to recover on two prom-
issory notes made by the defendant Grosvenor,

payable on demand, at the Citizens' Bank, to the order of the defendant Hart, with interest, in the first entitled cause, for $2,000, and in the other for $500, and both were indorsed by the defendant. Both are dated June 26, 1867. Hart alone defended.

The facts in each case are substantially the same, and are as follows: Grosvenor was cashier of the Citizens' Bank, located and doing business at Fulton, in the county of Oswego. Learning that one Cummings had $2,500 which he would loan, Grosvenor applied to him for a loan of the amount; and after some negotiation it was arranged between them that the loan should be made, to be secured by Grosvenor's note indorsed by the defendant Hart. During this negotiation, Cummings told Grosvenor that he would not probably want the money until the next winter, and might not for a year. Grosvenor then applied to Hart to indorse for him, informing him that he could get considerable time; and Hart consented to indorse if Grosvenor would secure him, therefor. The security required was given, and Hart indorsed the notes in controversy in these suits. The note of $2,000 was delivered to Cummings, and the one of $500 to Nelson, the plaintiff in the second entitled action, from whom the money was obtained, thereon. The note for $500 was made payable on demand because the loan was made of him for a short time, and that he might get the money on it when he wanted it. The $2,000 note was also made payable on demand so that Cummings could get the money when he wanted it.

All the parties to this paper lived in the village of Fulton, at the date of the notes, and continued to live there through the whole of the summer of 1857. On the 1st of August, 1857, the $2,000 note was presented to Grosvenor, at the Citizens' Bank, and payment demanded and refused. About the 20th of August one More called on Hart and informed him that he had called on Gros-

venor, had no confidence in him, and wanted the money on the note, of Hart.

In the second action, it was admitted that on the 4th of September, 1857, the $500 note was presented to Grosvenor at the bank, payment demanded and refused, and notice thereof given to Hart.

A verdict was taken for the plaintiff, in both cases, subject to the opinion of the court at General Term.

*Tyler & David,* for the plaintiff.

*J. H. Townsend,* for the defendants.

*By the Court,* MULLIN, J.   It is a rule of law perfectly well settled that a note payable on demand must be demanded, and notice of non-payment given to the indorser within a reasonable time after the date, in order to charge him as indorser; and if not so demanded and notice given, the indorser is discharged.   (1 *Parsons on Cont.* 217, *and notes.   Parsons on Merc. Law,* 107, *and notes.   Furman* v. *Haskin,* 2 *Caines,* 369.   *Sice* v. *Cunningham,* 1 *Cowen,* 408.   *Bank of Utica* v. *Smedes,* 3 *id.* 662.   *Seaver* v. *Lincoln,* 21 *Pick.* 267.   *Ranger* v. *Cary,* 1 *Metc.* 369.   *Field* v. *Nickerson,* 13 *Mass.* 131. *Sylvester* v. *Crapo,* 15 *Pick.* 92.)

What is a reasonable time is a mixed question of law and fact.   It is impossible for courts to prescribe any fixed rule by which to regulate cases.   Every one must therefore depend on its own circumstances.   There are several considerations which may be taken into the account in determining the question whether or not demand has been made within a reasonable time.

1st. The residence of the several parties to the paper. This, it is obvious, must be a controlling circumstance, in every case.   When the parties reside in the same town or city it is obvious that a much less time should be allowed than when they reside in different counties.

2d. Whether the bill or note is payable with, or without, interest, *Parsons*, in his *Mercantile Law*, 107, says: If said note be "*on interest*, this strengthens the indication that they (the bills or notes) were intended to remain, for a time, unpaid or undemanded. Justice Cowen, in *Wethey* v. *Andrews*, (3 *Hill*, 582,) says: "Here is a note payable to Vroom on demand with interest, and it came to his hands, as we must intend, some four or five weeks after issued, for it is not shown that he took it after that time. No case goes the length of saying that such a note is to be adjudged dishonored so soon after its date. If it had not been on interest, not being a bank note, I should have thought it right to presume that it had been demanded and payment refused, perhaps even by the time when Grimshaw obtained it. But I think that directly the contrary is to be presumed in regard to this note, which bore interest. No one could understand the parties to intend that these words meant interest for a few weeks only; nor would the payee or purchaser of a note, ordinarily, desire to take it on the terms of a payment so soon. It would be contrary to the general course of business to demand payment short of some proper point for computing interest—such as a quarter, half year, &c. In the late case of *Brough* v. *White*, (6 *Dowl. & Ryl.* 379,) all the judges concurred, expressly, in saying that such a note cannot be considered as dishonored till it is demanded and payment refused; and they put themselves on its being a continuing note, on its face." In 3 *Kent's Com.* 130, *note* (3,) it is said: "But if a note payable on demand provides for the payment of interest, this will be regarded as evidence that it was intended that the maker should have an extended credit, and an indorser or guarantor will be held liable accordingly." (18 *Conn.* 361.)

3d. That it was the understanding of the parties that payment was not to be immediately demanded, thus enabling the court to determine the question of what is

a reasonable time, as it was understood by the parties, when the contract was made.   In the case of *Wethey* v. *Andrews,* (*cited supra,*) Justice Cowen refers to the understanding and intention of the parties as a controlling circumstance in determining the question of time.

In *Sice* v. *Cunningham,* (1 *Cowen,* 409,) Justice Sutherland says : "I am of opinion that when a note payable on demand is made and negotiated in the ordinary way, *without any agreement or understanding among the parties,* as to the time when it ought to be paid, in judgment of law it ought to be considered as due *within* the period of five months ; and consequently, if payment is not demanded of the maker within that time, the indorser will be discharged.   It is to be presumed, from the fact that payment may be immediately demanded, upon such a note, that the indorser contemplated a short credit, when he put his name on it, and that was the condition on which he agreed to be responsible."

In *Van Hoesen* v. *Van Alstyne,* (3 *Wend.* 75,) Chief Justice Savage says : "From the remark of the defendant below (the indorser,) that Cooley (the maker) would get into business again and pay, it is evident an immediate demand and notice was not contemplated."

It is in evidence, in these cases, that the maker of the notes and the lenders of the money talked about a time of credit; that the money was not to be called for immediately.   And the maker, in his conversation with the indorser, told him he was to have the money on time ; and the indorser, when notified of the demand, complained that time enough had not been allowed ; that by the arrangement he was entitled to more time. It is thus brought home to the indorser that an immediate demand was not intended or expected, and he assented to it.

It is insisted, by the defendants' counsel that the evidence of the negotiation between the maker of the notes

Salmon *v.* Grosvenor.

and the lenders of the money is not competent, against the defendant; and that the effect of the evidence is to alter the written contracts between the parties. If that was the effect of the evidence, or it could be permitted to have any such effect, then, most clearly, it ought to have been stricken out. But it was not offered for the purpose of varying the agreement. The object was to show that an immediate or early demand was not contemplated. Proof of this fact did not change the contract, or its legal effect. The legal right to make an immediate demand and enforce payment remained perfect, although the intention not to demand in a year had been clearly proved. The law and the contract had their full effect when a reasonable time was allowed to the holder to make the demand. What length of time should be *the* reasonable time neither the law nor the contract defined, and it was left to the evidence to ascertain it.

In *Story on Contracts*, § 970, it is said: "When there is no agreement as to the time when a contract shall be performed, it must be executed within a reasonable time. What constitutes a reasonable time must depend on the peculiar circumstances of each case, and is a question to be determined by the jury. Parol evidence of the situation of the parties, and of their conversations, is admissible to determine their intention in respect to the time of performance. (*Ellis* v. *Thompson*, 3 *Mees. & Wels.* 445. *Cocker* v. *Hemp Manuf. Co.*, 3 *Sumner*, 530. *Sewal* v. *Wilkins*, 2 *Ship. R.* 168.")

That part of the evidence relating to the conversations between the maker and the lenders of the money is admissible against the defendant Hart, for the reason that the substance of their conversations was stated to Hart by the maker, and he did not repudiate the understanding they proved; and his assent, express or implied, was essential to give the arrangement any force or effect whatever.

On the evidence and the authorities, we may hold that in this case it was not the intention or understanding of the parties that payment should be demanded immediately, but that, on the contrary, time was to be allowed beyond the time the law authorized the holder to demand payment. The question now recurs, what length of time was the holder entitled to, before he was chargeable with laches and discharged the indorser?

In the case of the Salmon note, it was thirty-five days from date of note to demand. In the case of the Rogers note, it was sixty-nine days from date of note till demand. In *Losee* v. *Dunkin*, (7 *John.* 70,) it was held that a note payable on demand dishonored so as to let in a defence against the payee, in two and a half months after it was given. The court say: "There are no particulars peculiar to this case disclosed, and the court cannot say it was erroneous to let in the defence; for the circumstances of this case might have been such as to justify the conclusion that the note was dishonored when it was assigned." In *Furman* v. *Haskin*, (2 *Caines*, 369,) a note payable on demand and negotiated eighteen months after it was given, was deemed dishonored. In *Sice* v. *Cunningham*, (1 *Cowen*, 397,) five months was held too long to retain a note without demand, when the parties reside in the same place. The court did not find in the cases any which justified the holder in delaying the demand so long. It was in proof that the maker of the note desired a loan of a larger amount, on a credit of a year. The plaintiff agreed to make the loan, but had only $1,000, and expected, in a short time, to be in funds to advance the balance. It was agreed that the note in suit should be taken until the balance of the loan could be had, and then another note would be substituted. The indorser was not a party to this arrangement. The court held the evidence of this arrangement incompetent, as its effect was to vary the contract by making it payable at a future day.

It was not offered or received for the purpose of showing what, in the estimation of the parties, was a reasonable time. The reasoning of Justice Woodworth would seem, at first blush, to repudiate the doctrine of several cases, cited *supra;* but when the facts of the case are fully understood, there is no necessary clashing in the cases. In *Field* v. *Nickerson,* (13 *Mass.* 131,) it was held that where a note was not presented until the end of eight months, it was too late, and the indorser was discharged. In *Sylvester* v. *Crapo,* (15 *Pick.* 92,) seven days was held not too long. In *Ranger* v. *Cary,* (1 *Metc.* 369,) one month was held not too long. In *Van Hoesen* v. *Van Alstyne,* (3 *Wend.* 75,) the demand was made in a few weeks after the note was transferred to the plaintiff by the defendant, who indorsed it, and in two or three months gave notice of demand and nonpayment to the defendant. This case, it will be seen, is quite similar to the one of Salmon, at bar. The demand in the latter, as appears by the case, was made on the 1st of August, and notice was given about the 20th of the same month. Chief Justice Savage, in delivering the opinion of the court in this case, says: "The demand was in fact made within a few weeks, and notice given within two or three months. I am inclined to think this was sufficient, under the circumstances, to charge the indorser." The judgment in the case was reversed on other grounds; but the opinion on the main question stands in full force, and is entitled to the highest respect.

In *Wethey* v. *Andrews,* (3 *Hill,* 582,) there was a delay of four or five weeks or more, and yet it was held that it was not dishonored. In *Sanford* v. *Mickles,* (4 *John.* 226,) the court held a note payable on demand, and on which sundry payments had been made, not dishonored in five months, so as to let in a defence.

I have not collected all the cases in this state and Massachusetts, bearing on this question of what is a

Salmon *v.* Grosvenor.

reasonable time, in cases like those at bar; but those cited present the views of quite a number of judges as to what was a reasonable time under the circumstances presented in the several cases.

In view of all the facts and circumstances in these cases, I am of the opinion that the delay to demand and give notice was not such as to discharge the indorser. I concur with Justice Cowen that where parties contemplate a term of credit, and a note payable on demand, with interest, is given, it is reasonable to presume that they intended a delay for at least the ordinary period at which bank paper is drawn; viz. three months. And as the longest period, in either of these cases, is less than that, I think the indorser is not, and ought not to be held, discharged.

The demand made by Cummings, on the $2,000 note, on the 1st of August, was sufficient. A demand was in fact made, and was never withdrawn or revoked. The only circumstance relied on to impair the demand is the fact that Cummings promised the maker to call and see him again, in answer to an application for longer time. This answer can only be construed to mean that he would take the proposition into consideration, and give him, at some early day, an answer. He was not asked to withdraw or abandon the demand, in terms. The proposition, if accepted, would of course amount to that. But it wants that element, and until it is incorporated into the case, the demand must be held valid.

I think judgment should be rendered in favor of the plaintiff, on the verdict, in each case.

Judgment accordingly.

[ONONDAGA GENERAL TERM, April 6, 1858. *Bacon, Mullin* and *Allen,* Justices.]